UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
*Electronically Filed*

| | |
|---|---|
| ADAM WOOD, *on behalf of himself and all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>W6LS, INC., d/b/a WITHU and WITHU LOANS, and CALIBER FINANCIAL SERVICES, Inc.,<br><br>Defendants. | Case No.   4:24-cv-128-DJH<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

Plaintiff Adam Wood ("Plaintiff") brings this class action lawsuit on behalf of himself and all others similarly situated, by and through undersigned counsel, and hereby alleges the following against Defendant W6LS, Inc., doing business as WithU and WithU Loans ("WithU"), and Defendant Caliber Financial Services, Inc. ("Caliber," together with WithU, "Defendants"). Facts pertaining to Plaintiff and his experiences and circumstances are alleged based upon personal knowledge, and all other facts alleged herein are based upon investigation of counsel and—where indicated—upon information and good faith belief.

**NATURE OF THE ACTION**

1. On its website, WithU claims to "believe in people," telling its customers that "we treat our customers as people and partners, not numbers" and that "WithU delivers with a mix of empathy, honesty and services that let our customers know and feel they're in good hands."[1]

---

[1] https://www.withuloans.com/about (last accessed Oct. 16, 2024).

According to WithU, they deliver these platitudes by "offering personal loans up to $2,500" guided by its "four core principles: respect, empathy, trust and transparency."[2] However, in reality, nothing could be further from the truth.

2. What WithU doesn't say is that they take advantage of people at their most vulnerable, in desperate moments of financial hardship, and thumb their nose at the statutory laws of the Commonwealth of Kentucky by employing a scheme to charge the customers they say they treat with empathy and respect illegal usurious interest rates of almost 600 percent.[3]

3. To do this, Defendants represent that WithU is a tribal lending entity that is wholly-owned by the Otoe-Missouria Tribe of Indians (the "Tribe"), a sovereign nation located within the United States of America.[4] In reality, Defendants operate a rent-a-tribe scheme to try and circumvent state usury laws.

4. Rent-a-tribe is a colloquial phrase used to describe the business practices of non-tribal payday lenders, including WithU, who misrepresent themselves as being owned and operated by a Native American tribe and attempting to invoke sovereign immunity in order to avoid state usury laws.

5. According to Defendant Caliber's website, it "provides professional portfolio management services to lenders including the Tribe's consumer lending portfolios."[5] Caliber further represents it provides "Real-Time Flexible and Transparent Fintech Solutions."[6] Caliber provides portfolio management services to rent-a-tribe lenders, including WithU, and works jointly with WithU to issue unscrupulous and unlawful loans with staggering interest rates.

---

[2] *See* https://www.withuloans.com/ (last accessed Oct. 16, 2024)
[3] *See* https://support.withuloans.com/hc/en-us/articles/4407187169819-How-much-would-a-loan-cost-me-What-is-my-APR (last accessed Oct. 16, 2024)
[4] *See* https://www.withuloans.com/ (last accessed Oct. 16, 2024)
[5] *See* https://www.caliberfs.com/about (last accessed Oct. 16, 2024)
[6] *Id.*

6. Plaintiff Adam Wood brings this action to secure redress from predatory and unlawful loans issued and enforced by Defendants.

7. Plaintiff seeks a declaratory judgment that the loans are void under KRS 360.010 (Count I), and damages pursuant to KRS 360.020 (Count II) and KRS 367.110 (Count III).

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a) as well as 1332(d) because this case is brought as a class action where the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class, is a citizen of a state different from Defendant.

9. This Court has personal jurisdiction over Defendants because Defendants have intentionally directed their business activities in Kentucky, targeting the Kentucky market, and purposefully availed themselves of the privilege of conducting business in this state, including by targeting Kentucky as a state in which to offer loans. In addition, the conduct underlying the claims that caused Plaintiff's injuries took place in Kentucky, that is, Defendants entering into and collecting payment on its usurious loans occurred in this state, which was foreseeable to Defendants.

10. Venue is proper in this District under 28 U.S.C. § 1391(a) through (d) because a substantial part of the events giving rise to this action occurred in this District, including entering into and collecting payment on the loans took place in this District.

## PARTIES

11. Plaintiff Adam Wood is a natural person and resident of Owensboro, Daviess County, Kentucky.

12. Defendant W6LS, Inc., doing business as WithU and WithU Loans, claims to be a corporation organized under the laws of the Otoe Missouriana Tribe of Indians ("Tribe"), a federally-recognized Indian Tribe in Oklahoma. It also claims to be owned by the Tribe. Plaintiff disputes this.

13. Defendant W6LS, Inc., operates an online lending website, www.WithULoans.com, which makes loans at interest rates exceeding 500% to consumers in many states, including Kentucky.

14. Defendant W6LS, Inc., uses the address of 10600 S. Pennsylvania Ave., Suite 16 #828, Oklahoma City, Oklahoma 73170-4257, but this address is a rented private mailbox in a UPS store. The actual principal place of business of Defendant W6LS, Inc., is in Mission, Kansas.[7]

15. Defendant Caliber Financial Services, Inc., claims to be a corporation organized under the laws of the Tribe. It also claims to be owned by the Tribe. Plaintiff disputes this.

16. Defendant Caliber Financial Services, Inc., states on its website, www.CaliberFS.com, that its address is 1611 S. Utica Ave, #527, Tulsa, Oklahoma 74104-4909. This address is also a rented UPS Store mailbox.

17. Defendant Caliber Financial Services, Inc., states on its website that "We are headquartered in Red Rock, Oklahoma with additional offices located in Mission, KS."

18. The website contains a list of job openings. In September 2024, it listed:

   a. Senior Full Stack Developer – Overland Park, KS;

   b. Product Manager – Overland Park, KS;

   c. Account Specialist – Overland Park, KS;

---

[7] The Otoe-Missouria Tribe of Indians also claims, or claimed to operate, now or in the past, several other online payday lenders, including: (1) American Web Loan, (2) Clear Creek Lending, and (3) Great Plains Lending. Each of these lenders provided off-reservation addresses as their offices, and all of them were rented mailboxes at the same private mailbox provider.

    d. Technical Business Analyst – Mission, KS.[8]

 19. Defendant Caliber Financial Services, Inc., states on its website, www.CaliberFS.com, that it provides "Next Gen Fintech Solutions All In One Place," that "[w]e provide end-to-end portfolio management and personalized fintech solutions for partners who want to expand their portfolio and product offerings," and that "[w]e have the experience, mindset, processes, and tools to create real-time, streamlined experiences and personalized fintech solutions that provide expanded revenue streams for the Otoe-Missouria Tribe of Indians."

## FACTS

 20. On or about June 29, 2022, Plaintiff Adam Wood obtained a $2,000 loan from www.WithULoans.com, with a disclosed annual percentage rate of 492.93 percent. (Ex. 1, June 29, 2022, Loan Agreement). Plaintiff made payments on this loan, including interest.

 21. On or about August 1, 2022, Plaintiff obtained a $2,500 loan from www.WithULoans.com over the internet, with a disclosed annual percentage rate of 474.08 percent. (Ex. 2, Aug. 1, 2022, Loan Agreement). Plaintiff made payments on this loan, including interest.

 22. On or about November 29, 2022, Plaintiff obtained a $2,500 loan from www.WithULoans.com over the internet, with a disclosed annual percentage rate of 472.70 percent. (Ex. 3, Nov. 29, 2022, Loan Agreement). Plaintiff made payments on this loan, including interest.

 23. On or about December 16, 2022, Plaintiff obtained a $2,500 loan from www.WithULoans.com over the internet, with a disclosed annual percentage rate of 472.70

---

[8] *See* https://www.caliberfs.com/careers/openings (last accessed October 16, 2024).

percent. (Ex. 4, Dec. 16, 2022, Loan Agreement). Plaintiff made payments on this loan, including interest.

24. On or about January 15, 2023, Plaintiff obtained a $2,500 loan from www.WithULoans.com over the internet, with a disclosed annual percentage rate of 422.14 percent. (Ex. 5, Jan. 15, 2023, Loan Agreement). Plaintiff made payments on this loan, including interest.

25. On or about February 18, 2023, Plaintiff obtained a $2,500 loan from www.WithULoans.com over the internet, with a disclosed annual percentage rate of 410.24 percent. (Ex. 6, Feb. 18, 2023, Loan Agreement). Plaintiff made payments on this loan, including interest.

26. Each of the loans Plaintiff obtained from Defendants are written on a uniform standard form loan agreement used by Defendants on a regular basis.

27. Defendants regularly make loans to individuals in Kentucky at such rates and use the same standard form loan agreement.

28. The loans were obtained for personal, family, or household purposes and not for business purposes.

29. At no time has either of the Defendants had a license from the Kentucky Department of Financial Institutions or a state or federal banking or credit union charter, entitling it to make loans to Kentucky residents at more than the proscribed statutory maximum of 8 percent.

30. Defendants nevertheless advertise and make loans to Kentucky residents at rates greatly exceeding 8 percent.

31. Plaintiff signed the loan agreements electronically, while in Kentucky.

32. The funds were transferred electronically to Plaintiff's bank accounts in Kentucky.

33.  Repayment was to be made by ACH debit from Plaintiff's bank account in Kentucky.

34.  Plaintiff was a resident of Kentucky at all relevant times.

35.  At no time did Plaintiff visit the State of Oklahoma or any business premises of any Defendant in connection with the loans.

36.  WithU's website states that it "does not accept applications for this service from residents of all states, and the service may or may not be available to residents of your particular state."[9]

37.  Defendants intentionally violated Kentucky's rate limitations because they concluded Kentucky authorities were unlikely to take action to enforce them.

### KENTUCKY'S PROHIBITIONS ON PREDATORY LOANS

38.  Effective July 14, 2018, KRS 360.010 governs the legal interest rate that may not be exceeded with respect to residents of the state. KRS 360.010 forbids, with limited exceptions that do not apply here, parties from agreeing to a per annum interest rate higher than 8%.

39.  Under KRS 360.020, the knowing "taking, receiving, reserving, or charging of an interest rate greater than is allowed by KRS 360.010 … shall be deemed a forfeiture of the entire interest which the note, bill, or other evidence of debt carries with it." Where greater interest has been paid, the statute provides for "twice the amount of interest thus paid from the creditors taking or receiving the same: provided, that such action commenced within two (2) years from the time that the usurious transaction occurred." KRS 360.020(1).

40.  Any loans to Kentucky residents at more than 8% that are made by lenders violate KRS 360.010 and are subject to damages under KRS 360.020.

---

[9] *See* https://www.withuloans.com/ (last accessed November 4, 2024).

## INVALIDITY OF CLAIM OF TRIBAL IMMUNITY

41. In an attempt to evade prosecution under usury laws of states like Kentucky, online lenders like Defendants create an elaborate charade claiming their otherwise illegal business is entitled to the sovereign immunity of Native American tribes.

42. However, an entity must function as a legitimate "arm of the tribe" in order to fall under that tribe's sovereign immunity. *See Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1183 (10th Cir. 2010).

43. Where non-tribal individuals and entities control and manage the substantive lending functions, provide the lending capital necessary to support the operation, and bear the economic risk associated with the operation, they are not in fact "operated" by Native American tribes, and, therefore, are not shielded by sovereign immunity.

44. Further, sovereign immunity, even if legitimately invoked, still does not turn an otherwise illegal loan into a legal one. *See, e.g., United States v. Neff*, 787 F.App'x 81 (3d Cir. 2019) (upholding criminal convictions of two individuals engaged in an online payday lending rent-a-tribe scheme, stating that sovereign immunity does not transform illegal loans into legal ones and that "reasonable people would know that collecting unlawful debt is unlawful").

45. Attempting to circumvent state interest caps by fraudulently hiding behind tribal sovereign immunity has been found to constitute criminal conduct. *See United States v. Tucker, et al.*, No. 1:16-cr-00091-PKC, 2024 U.S. Dist. LEXIS 155383 (S.D.N.Y Aug. 28, 2024); *aff'd by United States v. Grote*, 961 F.3d 105 (2d Cir. 2020).

46. Defendants represent that they are "tribal lenders" but do not survive scrutiny when examined closely, since virtually all business functions occur far from tribal land, are conducted

by non-tribal members, and overwhelmingly benefit non-tribal members to such a degree that tribal involvement is effectively nil.

47. A review of the online resumes of Caliber employees shows none who has any connection to the Tribe or who live on the Tribe's reservation.

48. The LinkedIn profile for Charlie Corbin, "Recruiting Manager at Caliber Financial Services," contains links for open positions based in "Overland Park, Kansas," "Mission, Kansas," and "Kansas City Metropolitan Area" (Ex. 7) that were posted approximately one year ago.

49. Corbin's own location was given as Sugar Land, Texas.

50. Tim Madsen, Chief Marketing Officer, gave his location as Mission, Kansas, as did Doug Oliveira, Chief Information Officer.

51. On information and belief, no open positions for employment with Caliber list the Tribe's reservation in Oklahoma as a work-site.

52. Virtually none of WithU's business is conducted on the Tribe's reservation.

53. All essential business operations are performed in other locations outside of the Tribe's jurisdiction.

54. Off-reservation business operations, comprising substantially all of the company's functions, are conducted by and for the benefit of non-tribal members and investors.

55. The Tribe receives only a couple of pennies of each dollar as "rent," and 98% or more of revenues flow to non-tribal persons and entities.

56. While the Tribe's names and the names of some officers appear in documents establishing the formation of the corporate charters under which WithU and Caliber operate, on information and belief, such documents were designed, written by, approved by, and crafted for the benefit of non-tribal beneficiaries.

57. According to the U.S. Department of Health and Human Services, per capita income for the Tribe between 2015 and 2019 averaged $13,887 per year.[10]

58. The Tribe has no significant assets to leverage as collateral for the multi-million dollar revolving lines of credit required to fund multiple online payday lending enterprises which lend upward of $100 million a year.

59. On information and belief, while the Tribe is the nominal owner of WithU and Caliber, managers, underwriters, marketers, software vendors, and other service providers are all hired and managed by Defendants.

60. Thus, the Tribe exerts no control over the business, how it operates, who it lends to, or any other significant part of the business' operations.

61. The Tribe has engaged in similar "rent-a-tribe" schemes with other non-tribal investors in the past, including one which resulted in a class action lawsuit being filed against it.

62. In July 2021, a federal court approved an $86 million settlement in which the plaintiffs alleged the Tribe engaged in a rent-a-tribe scheme concerning American Web Loan; non-tribal individuals and entities – including two Wall Street Hedge Funds – colluded to make illegal loans to consumers at triple-digit interest rates and make it appear that the Tribe was the owner of the lending enterprise, despite the Tribe having almost no involvement in the loans and receiving less than 2% of revenues. *Solomon v. American Web Loan*, 375 F.Supp.3d 638 (E.D. Va. 2019).

63. Weeks after the court's final approval of the $86 million settlement, WithU began lending operations.

---

[10] *See* https://www.acf.hhs.gov/sites/default/files/documents/cb/tribal-fmap-reference-fy2022.pdf (last accessed Oct. 16, 2024).

## CLASS ALLEGATIONS

64. Plaintiff brings this claim on behalf of a class, pursuant to Fed. R. Civ. P. 23(a) and (b)(2), on behalf of himself and the following class of similarly-situated persons:

> All persons residing in Kentucky who, within the relevant statutory period, entered into a loan agreement with Defendants and paid money pursuant to the agreement.

65. Plaintiff may alter the class definition to conform to developments in the case and discovery.

66. The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least 100 class members.

67. There are many questions of law and fact common to the claims of Plaintiff and the proposed members of the Class, and those questions predominate over any questions that may only affect individual members. Common questions for the Class include but are not limited to the following:

    a. Whether the loans at issue are usurious under Kentucky law;

    b. Whether the loans at issue are void as contrary to public policy;

    c. Whether Defendants made deceptive, misleading, or false representations in connection with the loans;

    d. Whether Plaintiff and the Class may recover money paid to Defendants pursuant to any of the loans;

    e. Whether Defendants' conduct was willfully or knowingly unlawful.

68. Plaintiff has and will continue to fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interests antagonistic to those of the Class, and Defendants have

no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and they have the resources necessary to do so. Neither Plaintiff nor his counsel have any interest adverse to those of the other members of the Class.

69. Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff sustained damages as a result of Defendants' uniform wrongful conduct during transactions with Plaintiff and the Class.

### COUNT I
### VIOLATION of KRS 360.010
### Declaratory Judgment
*(On behalf of Plaintiff and Kentucky Class Members)*

70. Plaintiff and the Class repeat and re-allege each allegation contained in the Complaint as if fully set forth herein.

71. An actual and existing controversy of a justiciable nature exists between the parties with respect to the issues set out herein within the scope and meaning of 28 U.S.C. § 2201.

72. Defendants contracted for and collected loans at more than 8% interest from Plaintiff and the class members, in violation of KRS 360.010.

73. In accordance with 28 U.S.C. §§ 2201 and 2202, Plaintiff is entitled to a declaration that these agreements are void and unenforceable against the Plaintiff and the class members.

### COUNT II
### VIOLATION of KRS 360.020
*(On behalf of Plaintiff and Kentucky Class Members)*

74. Plaintiff and the Class repeat and re-allege each allegation contained in the Complaint as if fully set forth herein.

75. Defendants have devised and engaged in a scheme to fund, issue, and collect usurious loans through a rent-a-tribe scheme.

76. Plaintiff and the class members have taken usurious loans from Defendants and were forced to personally guarantee these debts.

77. Defendants are not exempt from state usury laws, nor are the transactions that are the subject of this action exempt from state usury laws.

78. The interest charged by Defendants in connection with these transactions was in excess of the maximum interest rate permitted by KRS 360.010.

79. Plaintiff and the class members have in fact paid Defendants interest in excess of the maximum interest rate permitted by KRS 360.010.

80. Defendants knowingly and willfully entered into the loans with usurious intent.

81. As a result of the foregoing illegal acts and practices, the Defendants have surrendered their right to collect any interest on any of these amounts.

### COUNT III
### VIOLATION OF THE KENTUCKY CONSUMER PROTECTION ACT
### KRS 367.110, et seq.
### (*On Behalf of Plaintiff & Kentucky Class Members*)

82. Plaintiff and the Class repeat and re-allege all other paragraphs of the Complaint as if fully set forth herein.

83. Defendants are "persons" for purposes of the Kentucky Consumer Protection Act ("KCPA"), KRS 367.110, et seq.

84. Defendants' conduct as alleged herein occurred in the conduct of trade.

85. The KCPA prohibits "unfair, false, misleading, or deceptive acts or practices in the conduct of any trade." Any person who "purchases or leases goods or services primarily for personal, financial, or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act

or practice declared unlawful by Ky. Rev. Stat. § 367.170, may bring an action under the Rules of Civil Procedure . . . ." KRS 367.220.

86. Defendants violated the KCPA by intentionally violating Kentucky's rate limitations and attempting to circumvent state usury laws by fraudulently and deceptively hiding behind tribal sovereign immunity. Defendants had an ongoing duty to Plaintiff and the Class to refrain from unfair and deceptive practices under the KCPA in the course of its business.

87. Plaintiff and the Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair, fraudulent, and deceptive behavior.

88. Defendant's unfair, fraudulent, and deceptive conduct was either knowing, willful, and intentional, or, alternatively, demonstrated a lack of care, recklessness, or conscious disregard for the rights of Plaintiff and the Class, and thus Plaintiff and the Class are entitled to punitive damages.

89. Defendants are liable to Plaintiff and the class members for damages in amounts to be proven at trial, including attorney's fees, costs, and punitive damages, as well as injunctive relief enjoining Defendants' unfair and deceptive practices, and any other relief deemed just and proper.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the Putative Class Members demand judgment in their favor against Defendants, jointly and severally, and seek an order:

    a) Certifying the proposed Class;

    b) Appointing Plaintiff as Class Representative;

    c) Appointing counsel for Plaintiff as Class Counsel;

d)      Permanently enjoining Defendants from engaging in the unlawful practices;

e)      Awarding Plaintiff and the Class compensatory, direct, consequential, statutory, and punitive damages, including prejudgment interest, in an amount to be determined at trial;

f)      Requiring Defendants to pay Plaintiff and the Class's attorneys' fees, costs, and expenses; and

g)      Granting such other and further relief as is just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff and the Class hereby demand that this matter be tried before a jury.

Dated: November 25, 2024

Respectfully submitted,

**/s/ Amanda M. Lockaby**
Matthew T. Lockaby
Amanda M. Lockaby
John M. Ghaelian
Lockaby PLLC
476 East High Street, Suite 200
Lexington, Kentucky 40507
Tele:  859.263.7884
Fax:   859.406.3333
Email: mlockaby@lockabylaw.com
       alockaby@lockabylaw.com
       jghaelian@lockabylaw.com

**/s/ Matthew J. Langley**
Matthew J. Langley
(*pro hac vice forthcoming*)
Almeida Law Group LLC
849 W. Webster Avenue
Chicago, IL 60614
Tele:  773.554.9354
Email: matt@almeidalawgroup.com
*Counsel for Plaintiff and the Class*