2025 WL 3565343
Only the Westlaw citation is currently available.
United States District Court, W.D. North Carolina,
Asheville Division.

Shelley BRIDGES, Lisa Blakemore, and Teresa Lukaszewicz, individually and on behalf of all others similarly situated, Plaintiffs,
v.
Raycen RAINES, Wakpamni Lake Community Corporation, WLCC II d/b/a Arrowhead Advance, WLCC Lending JEM d/b/a Explore Credit, WLCC Lending FDL d/b/a Fast Day Loans, WLCC Lending FDL d/b/a First Day Loan, and John Does Nos. 1–40, Defendants.

CIVIL CASE NO. 1:24-cv-00087-MR-WCM
|
Signed December 10, 2025

**Attorneys and Law Firms**

John Gerard Albanese, Pro Hac Vice, Marika K. O'Connor Grant, Pro Hac Vice, Berger Montague PC, Minneapolis, MN, Jeffrey Laurence Osterwise, Berger Montague PC, Philadelphia, PA, for Plaintiffs.

Joshua Daniel Davey, Troutman Pepper Locke LLP, Charlotte, NC, for Defendants Raycen Raines, Wakpamni Lake Community Corporation, WLCC II, WLCC Lending BGL, WLCC Lending JEM, WLCC Lending FDL.

**MEMORANDUM OF DECISION AND ORDER**

Martin Reidinger, Chief United States District Judge

***1 THIS MATTER** is before the Court on the Defendants' Motion to Compel Arbitration [Doc. 14] and the Defendants' Motion to Dismiss and/or Strike Class Allegations [Doc. 16].

## I. PROCEDURAL BACKGROUND

On March 25, 2024, the Plaintiffs Shelley Bridges, Lisa Blakemore, and Teresa Lukaszewicz initiated this action against the Defendant Raycen Raines, Wakpamni Lake Community Corporation, several lending entities, and John Does Nos. 1–40, alleging that the Defendants operated a predatory lending scheme in which the Defendants attempted to “cloak themselves with sovereign immunity ... to shield plainly illegal commercial conduct.” [Id. at 1–2]. The Plaintiffs assert a putative class action and allege that the Defendants' scheme violated the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1962(c), (d) (“RICO”); North Carolina's Usury Law; North Carolina's Consumer Finance Act; North Carolina's Unfair and Deceptive Trade Practices Act; Tennessee's Usury Law; and Wisconsin's Usury Law. [Id. at 19–28]. The Plaintiffs also allege claims for unjust enrichment and civil conspiracy. [Id. at 28–29].

The Defendants now move to compel arbitration and to dismiss and/or strike the class allegations in the Plaintiffs' Complaint. [Docs. 14, 16]. The Plaintiffs have responded to these motions [Docs. 20, 21], and the Defendants have replied [Docs. 22, 23]. Having been fully briefed, this matter is ripe for disposition.

## II. FACTUAL BACKGROUND

The Plaintiffs collectively allege that the Defendants are predatory lenders who have attempted to associate themselves with an American Indian tribe to engage in a predatory lending scheme seeking to have the tribe's sovereign immunity shield the Defendants from civil liability and government enforcement. [Doc. 1 at 1-2]. As part of the alleged scheme, the Defendants formed organizations to provide individuals with short-term loans with interest rates exceeding six hundred percent. [Id.]. The Plaintiffs each took out one or more of these loans and, in doing so, signed Loan Agreements that contained the following provisions:

> **Governing Law.** This Agreement is governed by the laws of the Oglala Sioux Nation of the Pine Ridge Reservation Tribe (“Tribal Law”), a federally recognized Indian Tribe, the Indian Commerce Clause of the United States Constitution, and applicable federal law. The Arbitration provision below is governed by Tribal Law, the Federal Arbitration Act (“FAA”), decisions of the United States Supreme Court interpreting the FAA, and other applicable federal law without regard to the laws of any state, including the conflict of laws rules of any state. We do not have a presence in South Dakota or any other State of the United States of America. Neither this Agreement nor the Lender is subject to the law of any State of the United States. You agree to be bound by Tribal Law, and in the event of a bona fide dispute between you and us, Tribal

EXHIBIT
C

WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Law and applicable federal law shall exclusively apply to such dispute.

....

**BINDING CONFIDENTIAL ARBITRATION AGREEMENT AND CLASS ACTION WAIVER**

***2** ....

**PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY.** Unless you exercise your right to opt-out of arbitration in the manner described below, any Claim you have with Lender or anyone else under this Agreement will be resolved by binding arbitration. Arbitration replaces the right to go to court, including the right to have a jury, ... and to participate in a class action or similar proceeding....

Any issues regarding the validity, effect and enforceability of this Agreement to Arbitrate (or any provision thereof) shall be determined solely by the Arbitrator.

....

**Agreement to Arbitrate.** You agree that any Claim ... will be resolved on an individual basis by arbitration in accordance with this Arbitration Provision, applicable Oglala Sioux tribal law, and Applicable Federal Law.

....

**YOU ARE GIVING UP YOUR RIGHT TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY, AND/OR TO PARTICIPATE AS A MEMBER OF A CLASS OF CLAIMANTS, IN ANY LAWSUIT AGAINST US AND/OR RELATED THIRD PARTIES ....**

....

**Waiver of Jury Trial and Waiver of Ability to Participate in a Class Action.** YOU HEREBY AGREE THAT YOU ARE WAIVING YOUR RIGHT TO A JURY TRIAL, TO HAVE A COURT DECIDE YOUR CLAIM, AND YOU ARE WAIVING YOUR ABILITY TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, TO PARTICIPATE IN A CLASS ACTION LAWSUIT, OR IN ANY OTHER REPRESENTATIVE CAPACITY FOR OTHERS IN THE ARBITRATION, AND TO CERTAIN DISCOVERY AND OTHER PROCEDURES THAT WOULD BE AVAILABLE IN A LAWSUIT. The arbitrator has the ability to award all remedies available under the Oglala Sioux Tribe's tribal law and applicable federal law, whether at law or in equity, to the prevailing party, except that the parties agree that the arbitrator has no authority to conduct class-wide proceedings and will be restricted to resolving the individual claims between the parties....

....

**Applicable Law and Judicial Review.** You and we choose Oglala Sioux tribal law, and Applicable Federal Law to govern the loan Agreement, the Arbitration Agreement and all Claims.

[Doc. 18-1: Bridges September 2023 Loan Agreement at 5–7; see also Doc. 18-2: Bridges November 2023 Loan Agreement at 5–8; Doc. 18-3: Blakemore June 2022 Loan Agreement at 5–7; Doc. 18-4 Blakemore June 2023 Loan Agreement at 9–15; Doc. 18-5 Lukaszewicz May 2022 Loan Agreement at 4–8]. [1] The Defendants argue that these provisions mandate that the Plaintiffs' claims be resolved in arbitration, and that each Plaintiff pursue his or her claims individually and not as a class action. [Docs. 15, 17].

## III. LEGAL STANDARD

***3** The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, establishes "a liberal federal policy favoring arbitration agreements in order to reverse the longstanding judicial hostility to arbitration agreements ... and to place arbitration agreements upon the same footing as other contracts." Murray v. United Food & Com. Workers Int'l Union, 289 F.3d 297, 301 (4th Cir. 2002) (internal citations and quotation marks omitted). In treating an arbitration agreement like any other contract, courts "may invalidate an arbitration agreement based on 'generally applicable contract defenses.'" Kindred Nursing Ctrs. Ltd. P'ship v. Clark, 581 U.S. 246, 251 (2017) (quoting AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011)).

Under the FAA, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983). "When

parties have entered into a valid and enforceable agreement to arbitrate their disputes and the dispute at issue falls within the scope of that agreement, the FAA requires federal courts to stay judicial proceedings and compel arbitration in accordance with the agreement's terms." Murray, 289 F.3d at 301 (citations omitted); see also 9 U.S.C. §§ 3-4.

The party seeking to compel arbitration under the FAA has the burden of establishing the existence of a valid agreement to arbitrate. Minnieland Priv. Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc., 867 F.3d 449, 456 (4th Cir. 2017).

## IV. DISCUSSION

### A. Delegation Clause

"The question whether the parties have submitted a particular dispute to arbitration, i.e., the '*question of arbitrability*,' is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002) (quoting in part AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 649 (1986)) (emphasis in original). The parties may manifest such clear and unmistakable intent through the inclusion of a delegation clause. See Henry Schein, Inc. v. Archer and White Sales, Inc., 586 U.S. 63, 69 (2019).

Here, the Loan Agreements at issue provide that "[a]ny issues regarding the validity, effect and enforceability of this Agreement to Arbitrate (or any provision thereof) shall be determined solely by the Arbitrator." [See Doc. 18-1: Bridges September 2023 Loan Agreement at 6]. This delegation clause evidences a clear and unmistakable intent to have any claims regarding the "validity, effect, or enforceability" of the Agreements to be resolved by an arbitrator, not the Court. However, the Plaintiffs contend that this delegation clause, along with the arbitration agreement in general, is unenforceable because it operates as a prospective waiver of their statutory rights. [See Doc. 20 at 27-29].

When a party makes a specific challenge to a delegation clause, the Court must evaluate the validity of such clause before compelling compliance with the arbitration agreement. Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 71 (2010). Thus, despite the existence of delegation clauses within the parties' agreements, the Court will consider the merits of the Plaintiffs' invalidity argument based on the prospective waiver doctrine.

### B. Prospective Waiver

#### 1. Federal Law

Under the prospective waiver doctrine, "an agreement that prospectively waives a party's right to pursue statutory remedies is unenforceable as a violation of public policy." Hengle v. Treppa, 19 F.4th 324, 334 (4th Cir. 2021) (quoting in part Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, 473 U.S. 614, 637 n. 19 (1985) (internal quotation marks omitted)). The mere inclusion of a foreign choice of law provision, however, "will not trigger application of the prospective waiver doctrine." Dillon v. BMO Harris Bank, N.A., 856 F.3d 330, 334 (4th Cir. 2017). As the Supreme Court has recognized, the FAA "allows parties to an arbitration contract considerable latitude to choose what law governs some or all of its provisions, including the law governing enforceability of a class-arbitration waiver. In principle, [the parties] might choose to have portions of their contract governed by the law of Tibet" or even "the law of pre-revolutionary Russia ...." DIRECTV, Inc. v. Imburgia, 577 U.S. 47, 53-54 (2015) (citations omitted). Thus, the salient inquiry is "whether, as a matter of law, the choice-of-forum and choice-of-law clauses operate in tandem as a prospective waiver of a party's right to pursue statutory remedies." Gibbs v. Haynes Investments, LLC, 967 F.3d 332, 340 (4th Cir. 2020) (citation omitted).

***4** In the context of tribal lending, the Fourth Circuit has held that arbitration agreements which apply tribal law to the exclusion of any federal substantive statutory remedies are unenforceable as a prospective waiver of federal rights. See Hengle, 19 F.4th at 339 (invalidating arbitration agreement where it effectively dictated the "exclusive application of tribal law in arbitration"); Gibbs v. Sequoia Cap. Operations, LLC, 966 F.3d 286, 293 (4th Cir. 2020) (finding arbitration agreement unenforceable where contract "mandate[d] the primary and effective control of tribal law in resolving disputes"); Dillon 856 F.3d at 336 (concluding that the arbitration agreement "evince[s] an explicit attempt to disavow the application of federal or state law" and thus was unenforceable); Hayes v. Delbert Servs. Corp., 811

F.3d 666, 675 (4th Cir. 2016) (concluding that an arbitration agreement which excluded the application of "any law other than" tribal law "almost surreptitiously waives a potential claimant's federal rights through the guise of a choice of law clause").

Here, the Loan Agreements provide that the arbitration provisions are "governed by Tribal Law, the Federal Arbitration Act ('FAA'), decisions of the United States Supreme Court interpreting the FAA, and other applicable federal law without regard to the laws of any state, including the conflict of laws rules of any state" and that "Oglala Sioux tribal law, and Applicable Federal Law" would "govern the loan Agreement, the Arbitration Agreement and all Claims." [Doc. 18-1: Bridges September 2023 Loan Agreement at 5–7]. These provisions do not, either explicitly or implicitly, operate to prospectively waive the Plaintiffs' federal statutory rights.

### 2. State Law

Despite the preservation of their rights under federal law, the Plaintiffs argue that the arbitration provisions are nevertheless unenforceable because they prospectively waive the Plaintiffs' statutory rights and remedies under *state* law. [Doc. 20 at 11-21].

In so arguing, the Plaintiffs rely on three sentences in a footnote in Viking River Cruises, Inc. v. Moriana, 596 U.S. 639 (2022), in which the Supreme Court stated in dicta as follows:

> In briefing before this Court, Viking argued that the principle that the FAA does not mandate enforcement of provisions waiving substantive rights is limited to federal statutes. This argument is erroneous. The basis of this principle is not anything unique about federal statutes.

596 U.S. at 653 n.5. The Court went on in that same footnote, however, to clarify that statement as follows:

> It is that the FAA requires only the enforcement of "provision[s]" to settle a controversy "by arbitration," § 2, and not any provision that happens to appear in a contract that features an arbitration clause. That is why we mentioned this principle in Preston [v. Ferrer, 552 U.S. 346 (2008)], which concerned claims arising under state law. See 552 U.S. at 360, 128 S.Ct. 978 (noting that under the agreement, a party "relinquishe[d] no substantive rights ... California law may accord him").

Id. Moreover, the paragraph of the Court's opinion where that footnote is placed reads, in pertinent part:

> **An arbitration agreement thus does not alter or abridge substantive rights; it merely changes how those rights will be processed.** And so we have said that " '[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral ... forum.' " Preston v. Ferrer, 552 U.S. 346, 359, 128 S.Ct. 978, 169 L.Ed.2d 917 (2008) (quoting Mitsubishi Motors Corp., 473 U.S. at 628, 105 S.Ct. 3346).

Id. at 653 (emphasis added). Thus, at most, the passage in Viking River cited by the Plaintiffs, when read in context of the Court's main analysis, stands for the proposition that substantive statutory rights, whether state or federal, are not forfeited simply by the fact that they are resolved in an arbitral, as opposed to a judicial, forum. In other words, the Supreme Court recognized that the inclusion of a clause requiring arbitration under the FAA is not some magical incantation that voids a choice of law provision.

***5** Under the prospective waiver doctrine, one cannot invoke rights under federal law, i.e., the FAA, while simultaneously waiving rights under federal law. "Because the FAA stands on equal footing with other federal statutes, the prospective waiver [doctrine] becomes relevant only where compelling arbitration, as the FAA instructs, simultaneously jeopardizes *federally protected* interests." Walton v. Uprova Credit LLC, 722 F.Supp.3d 824, 836 (N.D. Ill. 2024) (emphasis added). There is no inconsistency, however, in invoking federal law regarding arbitration *and* other federal rights, while also choosing certain other substantive law (whether that be a specific state's law, tribal law or the law of pre-revolutionary Russia) as controlling.

The waiver of other rights as may be conferred by other jurisdictions presents no conflict.[2]

Other federal courts have construed the prospective waiver doctrine in a similar manner. See Walton, 722 F.Supp.3d at 836 ("we ultimately remain unpersuaded that the prospective waiver doctrine was intended to preserve state statutory rights"); Johnson v. Opportunity Fin., LLC, No. 3:22cv190, 2023 WL 2636712, at *5-6 (E.D. Va. Mar. 24, 2023) ("the prospective waiver doctrine only applies to the waiver of federal, not state, statutory rights"). Limiting application of the prospective waiver doctrine to federal statutory rights is consistent with the principle that "parties to an arbitration contract [have] considerable latitude to choose what law governs some or all of its provisions." DIRECTV, 577 U.S. at 53-54. Thus, parties agreeing to arbitrate under the FAA could choose the law of North Carolina, North Dakota, or the tribal law of a federally recognized Indian tribe, so long as there is no explicit or implicit preclusion of other federal statutory rights. As the parties' agreements do not prospectively waive the Plaintiffs' federal statutory rights, the prospective waiver doctrine does not render the arbitration provisions of these agreements unenforceable.

### 3. RICO

The Plaintiffs next argue that because the choice-of-law provisions in the Loan Agreements preclude even the *consideration* of state law, the Plaintiffs will not be able to establish a RICO claim in arbitration.[3] As such, the Plaintiffs contend, the arbitration provisions are unenforceable because they implicitly waive their federal substantive rights under RICO. [Doc. 20 at 21-22]. [Id.].

In arguing that the language of the arbitration provisions constitutes an implicit waiver of their right to bring RICO claims, the Plaintiffs cite Hengle and Dillon, supra. The Plaintiffs' reliance on Hengle and Dillon, however, is misplaced. In both cases, the delegation clauses required the application of tribal law in arbitration *to the exclusion of* all federal substantive law. Hengle, 19 F.4th at 342; Dillon, 856 F.3d at 335. As such, the Fourth Circuit held that the arbitration provisions "function[ed] as a prospective waiver of the [plaintiffs'] rights to pursue federal statutory remedies," including under RICO. Hengle, 19 F.4th at 342; see also Dillon, 856 F.3d at 336. By contrast, in the present case, the arbitration provisions explicitly provide for the application of both tribal *and* federal law. As such, it is undisputed that the Plaintiffs can pursue their RICO claims at arbitration. While the Plaintiffs argue that they will be precluded from relying on their respective state usury laws to establish a RICO violation and thus will not prevail, this is of no moment. "[A] plaintiff's chance of success plays no role in the analysis deciding whether arbitration must be had." Johnson, 2023 WL 2636712, at *5. "It is enough that the plaintiff is not barred from bringing her claim, even if it is bound for defeat." Id.

### 4. Tribal Credit Code

***6** Finally, the Plaintiffs argue that the Tribal Credit Code prospectively waives a borrower's rights and deprives them of any meaningful opportunity to vindicate their federal claims. [Doc. 20 at 22-27]. Specifically, the Plaintiffs contend that the language contained in the Loan Agreements' choice-of-law provisions—"the laws of the tribe and applicable federal law"—does not sufficiently encompass all federal substantive law. [Id. at 25]. The Plaintiffs proclaim that the Court must read references to " 'applicable federal law' ... in conjunction with the contract as a whole," including the "incorporation of the Tribal Credit Code" which, according to the Plaintiffs, excludes some federal law. [Id. at 26].

The Defendants concede, however, that, under the Loan Agreements, "[f]ederal law is equally available along with tribal law" in arbitration. [Doc. 15 at 20]. In this respect, this matter is similar to Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, 473 U.S. 614 (1985), the case in which the Supreme Court introduced the prospective waiver doctrine. In Mitsubishi, the Supreme Court determined that, after a party conceded that federal law applied in arbitration, there was no need to speculate on either (1) "the possibility that the arbitral panel will read [a] provision ... to displace American law," or (2) "the capacity" of an aggrieved party "to reinitiate suit in federal court" if the arbitral panel failed to apply American law. 473 U.S. at 637 n.19. Similarly, here, because the Defendants concede that federal law will apply in arbitration, this Court need not speculate on how an arbitrator may interpret the language "applicable federal law."

For the foregoing reasons, the Court concludes that the choice-of-law provisions contained in the Loan Agreements do not implicate the prospective waiver doctrine.

Accordingly, the Court will grant the Defendants' Motion to Compel Arbitration and stay this action pending arbitration in accordance with the Loan Agreements.

**C. Class Allegations**

The Defendants state that their Motion to Dismiss and/or Strike Class Allegations "need only be decided in the event that the motion to compel arbitration is denied." [Doc. 16 at 2 n.2]. Because the Court is granting the Defendants' Motion to Compel Arbitration [Doc. 14], the Court will deny the Defendants' Motion to Dismiss and/or Strike Class Allegations [Doc. 16] as moot and dismiss the Motion without prejudice to the Defendants filing a similar motion in arbitration.

**V. CONCLUSION**

For the foregoing reasons, the Court concludes that the choice-of-law provisions contained in the Loan Agreements do not implicate the prospective waiver doctrine. Accordingly, the Court will grant the Defendants' Motion to Compel Arbitration and stay this action pending arbitration in accordance with the Loan Agreements. Because the Court is granting the Defendants' Motion to Compel Arbitration, the Court will deny the Defendants' Motion to Dismiss and/or Strike Class Allegations as moot and dismiss the Motion without prejudice to the Defendants filing a similar motion in arbitration.

**ORDER**

**IT IS, THEREFORE, ORDERED** that the Defendants' Motion to Compel Arbitration [Doc. 14] is **GRANTED**, and the parties are hereby ordered to arbitrate their dispute in accordance with the terms of the parties' agreements. This matter is hereby **STAYED** pending arbitration in accordance with the parties' agreements.

**IT IS FURTHER ORDERED** that the Defendants' Motion to Dismiss and/or Strike Class Allegations [Doc. 16] is **DENIED** and **DISMISSED WITHOUT PREJUDICE**.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2025 WL 3565343

## Footnotes

1 While the Loan Agreements are not attached to the Complaint, they are explicitly incorporated into the Complaint by reference and their authenticity is not in dispute. Therefore, they may be considered. See Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016). Additionally, the language in each Loan Agreement is materially the same. Therefore, throughout this opinion, the Court will cite only to the Bridges September 2023 Loan Agreement in referencing the language contained in each of the Plaintiffs' Loan Agreements.

2 If, for example, the parties had invoked the arbitration act of a particular state, while also purporting to waive any substantive rights under *that* state's laws, then such an inconsistency may be found. But that is not the circumstance presented here.

3 The federal RICO statute defines "unlawful debt" in part as a debt "which is unenforceable under *State* or Federal law in whole or in part as to principal or interest because of the laws relating to usury." 18 U.S.C. § 1961(6) (emphasis added).

End of Document © 2026 Thomson Reuters. No claim to original U.S. Government Works.